UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATIONAL FEDERATION OF THE BLIND OF NEW YORK STATE, INC., and EMELINE LAKROUT, | ) ) ) ) ) ) | |
| | | Case No: |
| Plaintiffs, | ) ) | Judge: |
| v. | ) ) | Magistrate Judge: |
| NEW YORK STATE UNIFIED COURT SYSTEM, MILTON ADAIR TINGLING, in his official capacity, and CHRISTOPHER DISANTO, in his official capacity, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT**

BIZER & DEREUS
Attorneys for Plaintiff
Andrew D. Bizer (NY # 4208955)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

AND

BROWN GOLDSTEIN & LEVY
Attorneys for Plaintiff
Eve Hill (pro hac vice to be submitted)
ehill@browngold.com
120 E. Baltimore St.
Ste. 2500
Baltimore, MD 21202
T: 410-962-1030 x1311; F: 410-385-0869

## PRELIMINARY STATEMENT

This civil rights case is brought by a blind individual, EMELINE LAKROUT (hereafter "Ms. Lakrout"), and an association of blind individuals in New York State, NATIONAL FEDERATION OF THE BLIND OF NEW YORK STATE (hereafter "NFBNY") (hereinafter collectively "Plaintiffs"). Plaintiffs hereby sue the NEW YORK STATE UNIFIED COURT SYSTEM, MILTON ADAIR TINGLING in his official capacity as the County Clerk and Commissioner of Jurors for the Supreme Court, New York County, and CHRISTOPHER DISANTO, in his official capacity as Chief Clerk for New York County Supreme Court, Criminal Term (hereafter collectively "Defendants"). Plaintiffs seek to remedy the systemic discrimination by Defendants against blind individuals who report for jury duty each year, entirely capable of fulfilling their civic duty as jurors. Ms. Lakrout was excused from jury duty on the basis of her blindness and denied any accommodation that would allow her to serve as a juror. NFBNY is an advocacy organization for blind individuals in New York State. Defendants discriminate against blind jurors by dismissing them on the basis of their blindness, failing to reasonably accommodate them or provide auxiliary aids and services, and failing to have any policies or procedures in place with respect to assistive technology for blind jurors.

Plaintiffs Ms. Lakrout and NFBNY hereby file this Complaint, with Ms. Lakrout praying for injunctive relief, damages and attorneys' fees and costs, and NFBNY praying for injunctive relief and attorneys' fees and costs. Plaintiffs sue the following: NEW YORK STATE UNIFIED COURT SYSTEM, the judicial branch of the State of New York, which comprises all the courts of the State of New York, MILTON ADAIR TINGLING, in his official capacity as the County Clerk and Commissioner of Jurors for the Supreme Court, New York County, and

CHRISTOPHER DISANTO, in his official capacity as Chief Clerk for New York County Supreme Court, Criminal Term for declaratory and injunctive relief, damages, and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ("Section 504" or "Rehabilitation Act"),. Ms. Lakrout seeks compensatory and nominal damages against Defendants. It is Ms. Lakrout's position that an award of nominal damages against Defendants, regardless of the amount, would confer significant civil rights to the public as a judgment in her favor would deter Defendants from discriminating against blind individuals in the future.

## FACTUAL SUMMARY

1.    Ms. Lakrout is an individual with a disability. Ms. Lakrout is legally blind and uses a white cane for mobility, a screen reader for navigating her computer and phone, and other assistive technology. Ms. Lakrout works full-time in marketing for Unilever, but in her spare time she serves as a consultant on accessibility issues and gives speeches about the importance of accessibility and inclusion for individuals with disabilities. Thus, Ms. Lakrout seeks increased inclusion of individuals with disabilities and removal of accessibility barriers not just for her own sake, but for the sake of the broader disability community. NFBNY is the New York State affiliate of the National Federation of the Blind, a national nonprofit whose mission is to coordinate programs, services and resources for blind Americans. The NFB membership network for blind individuals provides those members with access to information and training, the opportunity to connect with other blind individuals around the country, and other resources. The members of NFBNY are

blind individuals who advocate as a group for increased access and inclusion for the blind in New York State.

2.  Ms. Lakrout is a resident of New York County, New York. Ms. Lakrout was summoned for New York County jury duty at 111 Centre Street in August 2023. After rescheduling the August dates to accommodate travel, Ms. Lakrout reported for jury duty on October 16, 2023. Ms. Lakrout went with a group of other prospective jurors to participate in jury selection for a criminal case in New York County Supreme Court, Criminal Term against Defendant Adam Foss in courtroom 677.

3.  Ms. Lakrout sat with the other prospective jurors while they were asked questions as a group that required raising a hand in response. These questions included, among others, whether anyone knew the defendant, whether anyone felt they could not be impartial given the nature of the crime, whether anyone felt they could not be impartial given the defendant's race or gender, whether anyone knew or had affiliations with a specific book publisher, the singer and activist John Legend, and several other individuals. As each question was asked and the prospective jurors began raising their hands, groups of jurors with raised hands were dismissed. Ms. Lakrout did not raise her hand in response to any of the questions and she was not dismissed. Ms. Lakrout was then told to return the following day to continue the juror selection process.

4.  When Ms. Lakrout returned on October 17, 2023, groups of prospective jurors were called into the jury box for voir dire, while the remainder of the group, including Ms. Lakrout, sat in the gallery. As the attorneys asked questions of the prospective jurors, they also explained the nature of the evidence that would be considered by the jury in the case against

Adam Foss. Mr. Foss was charged with Rape in the First Degree and Sexual Abuse in the First Degree.[1]

5.      The evidence that the attorneys described was text messages and photos exchanged between Mr. Foss and the complaining witness. There was no mention of direct evidence that involved photo identification, or anything else that required a determination based solely on the subjective interpretation of how the evidence looked to a sighted individual. The judge periodically ordered all the jurors into the hallway and then back into the courtroom.

6.      While in the hallway during one of these breaks, a bailiff approached Ms. Lakrout and asked her name. Ms. Lakrout told him her name and he returned to the courtroom.

7.      A few minutes later the bailiff came back and told Ms. Lakrout that she was excused from jury duty. Ms. Lakrout asked the bailiff why she was excused, and he informed her that, because she is blind, counsel was concerned about her ability to review all the evidence in the case.

8.      Ms. Lakrout told the bailiff that she should be able to serve on the jury with the help of certain accommodations.

9.      All the prospective jurors were then called back into the courtroom, including Ms. Lakrout. Everyone in the gallery was then sent out of the courtroom. The judge then asked Ms. Lakrout to return to the courtroom and said that he heard she wanted to address the court.

---

[1] https://manhattanda.org/d-a-bragg-announces-indictment-of-prosecutor-impact-founder-adam-foss-for-raping-a-woman-while-she-slept/

10. Ms. Lakrout told the judge that she was concerned that she was being dismissed based on her blindness. She stated that, based on the discussion of the evidence that she had heard throughout the day, she felt confident she could serve as a juror on this case. The judge then asked her to step out of the courtroom.

11. A few minutes later the judge called Ms. Lakrout back in and confirmed that she was being excused from jury duty. Ms. Lakrout stated that she was disappointed to be dismissed on the basis of her blindness. The judge informed her that he could not disclose the basis for her dismissal. Ms. Lakrout then left the courthouse.

12. Ms. Lakrout decided to investigate whether the New York State Unified Court System has methods in place to accommodate individuals with disabilities, such as herself.

13. Through her counsel, Ms. Lakrout submitted a public records request to the New York State Unified Court System Office of Court Administration on August 16, 2024. That request asked for "any and all documents pertaining to New York County Supreme Court, Criminal Term's use of adaptive technology to assist or accommodate blind jurors or prospective jurors…"

14. On September 17, 2024, the Office of Court Administration responded to the request, offering that "The Office of Court Administration has conducted a diligent search of available records and has not located any records responsive to your request."

15. Ms. Lakrout requested accommodations when she was first given an indication from the bailiff that she would not be able to serve as a juror due to her blindness. At no point did the bailiff, judge, or any other court personnel offer her any of the accommodations that she would require.

16.    The lack of any documents related to the use of adaptive technology for blind jurors indicates a systemic failure by the New York County Supreme Court, Criminal Term in accommodating blind individuals called to jury duty. Although the court website states that it will provide auxiliary aids or services and make reasonable modifications in practices or procedures,[2] the Office of Court Administration was unable to provide any documentation of those policies. Ms. Lakrout's lived experience as a juror indicates that there were no policies in place to accommodate blind individuals in the jury pool. Ms. Lakrout's request for equality of treatment was ignored, and no other attempts were made by the judge or any other court staff to accommodate Ms. Lakrout's disability.

## **THE PARTIES**

### A.  National Federation of the Blind of New York State

17.    NFBNY is an organization whose mission is to advance the general welfare of the blind in New York State and achieve the integration of the blind into society as equal, among other goals.[3]

18.    NFBNY is an affiliate of the National Federation of the Blind, a nationwide advocacy group for blind individuals that facilitates programs and services for blind individuals.

19.    As a local affiliate of the national organization, NFBNY focuses on regional advocacy issues that impact its members, setting a legislative agenda each year to focus on bills that increase access, justice, and funding, for blind individuals.

---

[2] https://ww2.nycourts.gov/Accessibility/index.shtml
[3] Constitution of the National Federation of the Blind of New York State, Incorporated as amended October 24, 2021, https://nfbny.org/sites/default/files/NFB-New-York-State-Constitution-2021.pdf

20.    NFBNY's active members are residents who live within its boundaries of New York State. Some of NFBNY's members live in Manhattan. As blind individuals who are residents of Manhattan, these members are all eligible to be summoned for jury duty in New York County courts.

21.    NFBNY is an organizational plaintiff with associational standing in this case.

        B.    Emeline Lakrout

22.    Ms. Lakrout is a resident citizen of New York County, New York.

23.    Ms. Lakrout is an individual with a disability under the ADA and Rehabilitation Act. Ms. Lakrout is legally blind. Due to her disability, Ms. Lakrout is substantially impaired in the major life activity of seeing and requires a white cane for mobility, a screen reader for navigating her computer and phone, and other assistive technology.

24.    Ms. Lakrout is eligible to perform jury duty and was summoned to do so.

        C.    New York State Unified Court System

25.    Defendant NEW YORK STATE UNIFIED COURT SYSTEM is the judicial branch of the State of New York, which comprises all the courts of the State of New York.  Upon information and belief, NEW YORK STATE UNIFIED COURT SYSTEM is responsible for the operations of the New York County Supreme Court, Criminal Term, located at 111 Centre Street, New York, NY 10013 and 100 Centre Street, New York, NY 10013.

26.    Jury duty for New York County is a service, program, or activity of NEW YORK STATE UNIFIED COURT SYSTEM.

27.    NEW YORK STATE UNIFIED COURT SYSTEM is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and as such it is subject to Title II of the ADA.

8

28.   On information and belief, NEW YORK STATE UNIFIED COURT SYSTEM receives federal financial assistance and is therefore a covered entity under the Rehabilitation Act.

        D.   Milton Adair Tingling

29.   Defendant MILTON ADAIR TINGLING is the County Clerk and Commissioner of Jurors for the Supreme Court, New York County.

30.   He is sued in his official capacity for injunctive and declaratory relief and attorneys' fees/costs pursuant to the doctrine of *Ex parte Young*.

        E.   Christopher DiSanto

31.   Defendant CHRISTOPHER DISANTO is the Chief Clerk for New York County Supreme Court, Criminal Term.

32.   He is responsible for facilitating disability accommodations in New York County Supreme Court, Criminal Term.

33.   He is sued in his official capacity for injunctive and declaratory relief and attorneys' fees/costs pursuant to the doctrine of *Ex parte Young*.

## JURISDICTION & VENUE

34.   This is an action for relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., (see also 28 U.S.C. § 2201 and § 2202), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

35.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events which are the subject of this action took place in New York County, New York.

36.   All events giving rise to this lawsuit occurred in the Southern District of New York.

## COUNT I: VIOLATION OF TITLE II
## OF THE AMERICANS WITH DISABILITIES ACT

37.    PLAINTIFFS reallege and reaver the preceding paragraphs as if they were expressly restated herein.

38.    Upon information and belief, DEFENDANTS facilitate jury duty service in New York County Supreme Court, Criminal Term.

39.    Title II of the ADA requires that no qualified individual with a disability shall, on the basis of disability, be excluded from participation in, be denied the benefits of, or otherwise be discriminated against in the services, programs, or activities of a public entity.

40.    The ADA requires that a public entity make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.

41.    Title II of the ADA also requires a public entity to furnish appropriate auxiliary aids and services where necessary to afford individuals equally effective communication regarding a service, program, or activity of that entity.

42.    New York State law provides that in order to qualify as a juror, a person must be a citizen of the United States and a resident of the county, over eighteen years old, never convicted of a felony, and able to understand and communicate in the English language.[4]

---

[4] N.Y. Judiciary Law § 510 (McKinney)

MS. LAKROUT met all of those qualifications when she participated in juror selection in October 2023 and she meets all of those qualifications at present.

43.     As a registered voter in New York County and a holder of a New York State ID registered at her current address in New York County, MS. LAKROUT is subject to compulsory appearance at any time, as directed by DEFENDANTS, to serve for jury duty.[5]

44.     MS. LAKROUT was called for jury duty and appeared to serve on a jury. DEFENDANTS dismissed MS. LAKROUT based on her disability and denied her accommodations and auxiliary aids that would have allowed her to participate as a juror.

45.     MS. LAKROUT wants to serve on a jury and would do so if called and provided accommodations and auxiliary aids.

46.     NFBNY members include blind individuals who are eligible for jury duty in New York County, and are subject to compulsory appearance at any time, as directed by DEFENDANTS, to serve for jury duty.

47.     NFBNY members want to serve on juries if provided accommodations and auxiliary aids and presently fear that they will encounter discrimination during the jury selection process in the future.

48.     Upon information and belief, DEFENDANTS have discriminated against MS. LAKROUT in violation of the ADA by excluding and/or denying MS. LAKROUT the benefits of their services, programs, and/or activities by failing to, inter alia, allow blind individuals to serve

---

[5] https://nyjuror.gov/juryQandA.shtml#Q2

on juries, accommodate blind individuals serving on juries with assistive technology or auxiliary aids, and have any policy or procedure in place with respect to accommodating blind jurors.

49.     Upon information and belief, DEFENDANTS continue to discriminate against NFBNY members in violation of the ADA by excluding and/or denying NFBNY members the benefits of their services, programs, and/or activities by failing to, inter alia, allow blind individuals to serve on juries, accommodate blind individuals serving on juries with assistive technology or auxiliary aids, and have any policy or procedure in place with respect to accommodating blind jurors.

50.     NFBNY members have reasonable grounds for believing that they will continue to be subjected to discrimination due to DEFENDANTS' failure to, *inter alia*, allow blind individuals to serve as jurors on the basis of their blindness, accommodate blind individuals serving on juries with assistive technology or auxiliary aids, and have any policy or procedure in place with respect to accommodating blind jurors.

51.     PLAINTIFFS have retained the undersigned counsel and are entitled to recover reasonable attorneys' fees, costs, and litigation expenses from DEFENDANTS pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

52.     MS. LAKROUT has suffered, and continues to suffer, irreparable injury by virtue of DEFENDANTS' invasion of the rights conferred on her by the ADA.

53.     NFBNY members suffer irreparable injury by virtue of DEFENDANTS' invasion of the rights conferred on them by the ADA.

54.     Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is vested with authority to grant injunctive relief to PLAINTIFFS, including an order that DEFENDANTS make their programs and services readily accessible to and useable by Plaintiffs and all others similarly situated.

55.     DEFENDANTS' actions and inactions in violation of the ADA were done with deliberate indifference to the substantial risk of discrimination against MS. LAKROUT and other blind prospective jurors.

56.     MS. LAKROUT has suffered damages from DEFENDANTS' discrimination.

## **COUNT II: VIOLATION OF THE REHABILITATION ACT**

57.     PLAINTIFFS adopt and re-allege the allegations contained in all proceeding paragraphs as if fully stated herein.

58.     Upon information and belief, DEFENDANTS have been and continue to be recipients of federal financial assistance within the meaning of 29 U.S.C. § 794 and are therefore subject to Section 504 and its implementing regulations.[6]

59.     The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

---

[6] https://www.usaspending.gov/award/ASST_NON_H79TI081041_7522

60.  Upon information and belief, as set forth herein, DEFENDANTS have violated Section 504 by intentionally excluding MS. LAKROUT, solely by reason of her disability, from participation in, and denying her the benefits of, and has otherwise subjecting her to discrimination under, DEFENDANTS' programs and services.

61.  Upon information and belief, a non-exclusive list of DEFENDANTS' violations of Section 504 against MS. LAKROUT are evidenced by:

   A.  denying MS. LAKROUT access to, and the opportunity to participate in or benefit from, the programs and services offered by DEFENDANTS through participation in jury service;

   B.  otherwise limiting MS. LAKROUT in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who participate in the programs and services offered by DEFENDANTS;

   C.  denying MS. LAKROUT access to assistive technology or auxiliary aides necessary for equally effective communication during jury service;

   D.  denying MS. LAKROUT reasonable accommodations for jury service.

62.  Upon information and belief, NFBNY members are likely to encounter discrimination by DEFENDANTS based solely on their blindness upon reporting for jury duty in the future.

63.  DEFENDANTS' discriminatory actions and inactions in violation of Section 504 were done with deliberate indifference to the substantial risk of discrimination against MS. LAKROUT and other blind prospective jurors.

64.  MS. LAKROUT has suffered damages as a result of DEFENDANTS' discrimination.

65.    MS. LAKROUT and members of the NFBNY have been, and without the relief requested herein will continue to be, denied access to the services, programs, and activities offered by DEFENDANTS solely by reason of their disabilities in violation of Section 504.

66.    PLAINTIFFS have retained undersigned counsel for the filing and prosecution of this action. PLAINTIFFS are entitled to recover their attorneys' fees, costs, and litigation expenses from DEFENDANTS pursuant to 29 U.S.C. §794(b).

## **PRAYER FOR RELIEF**

67.    WHEREFORE, PLAINTIFFS pray that:

A.    This Court issue a Declaratory Judgment that determines that DEFENDANTS are in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*;

B.    This Court issue a Declaratory Judgment that determines that the programs and activities facilitated by DEFENDANTS are in violation of Section 504 of the Rehabilitation Act;

C.    This Court grant preliminary and permanent injunctive relief against DEFENDANTS including an order

a.    to make the jury service programs and activities offered and administered therein otherwise readily accessible to and usable by individuals with disabilities to the extent required by the ADA and Rehabilitation Act;

b.    to require DEFENDANTS to make reasonable modifications in policies, practices or procedures, when such modifications are necessary

to afford all offered programs, services, facilities, privileges, and advantages to individuals with disabilities; and

    c.  to require DEFENDANTS to take such steps that may be necessary to ensure blind individuals have equally effective communication in jury service by providing auxiliary aides and services;

D.  This Court enter an Order directing DEFENDANTS to alter and modify its programs and services to comply with the ADA and Section 504;

E.  This Court award MS. LAKROUT monetary damages (including compensatory, statutory, and nominal damages) pursuant to Title II of the ADA, and 29 U.S.C. § 794a(a)2 for the harm caused by DEFENDANTS' discriminatory practices and barriers;

F.  This Court award PLAINTIFFS reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175; and

G.  This Court order such other relief as the Court deems just and proper, and/or is allowable under Title II of the Americans with Disabilities Act and the Rehabilitation Act.

H.  PLAINTIFFS request a Trial by Jury as to all claims and factual issues.

Respectfully Submitted,

BIZER & DEREUS
Attorneys for Plaintiff
Andrew D. Bizer (NY # 4208955)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Andrew D. Bizer
        ANDREW D. BIZER


BROWN GOLDSTEIN & LEVY
Attorneys for Plaintiff
Eve Hill (pro hac vice to be submitted)
ehill@browngold.com
120 E. Baltimore St.
Ste. 2500
Baltimore, MD 21202
T: 410-962-1030 x1311; F: 410-385-0869

17