USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL FEDERATION OF THE BLIND OF NEW
YORK STATE, INC., and EMELINE LAKROUT,

Plaintiff,

-against-

NEW YORK STATE UNIFIED COURT SYSTEM,
MILTON ADAIR TINGLING, in his official capacity, and
CHRISTOPHER DISANTO, in his official capacity,

Defendants.

---

1:24-cv-07789-MKV

**ORDER GRANTING
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Jury service is critical to the orderly dispensation of justice in the American legal system and is one of the pillars of our democracy. This case concerns the rights of a visually impaired individual to serve on a jury and specifically, whether her excusal from jury service was discriminatory and violated her rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, *et seq.* ("Rehabilitation Act).

Plaintiff, Emeline Lakrout,[1] sues Defendants the New York State Unified Court System, and, in their official capacities, Milton A. Tingling, a former judge and the current New York County Commissioner of Jurors, and Christopher DiSanto, the Chief Clerk of the Supreme Court-Criminal Term, New York County (collectively "Defendants"). Plaintiff asserts two identical claims under Title II of the ADA and the Rehabilitation Act, alleging that Defendants discriminated

---

[1] The original complaint named as plaintiffs both Emeline Lakrout and the National Federation of the Blind of New York State Inc. ("NFBNY"). [ECF No. 1]. However, NFBNY was dropped as a plaintiff in the Amended Complaint and only Plaintiff Lakrout remains as a party plaintiff. [ECF No. 27 ("AC")].

1

against her based on her disability as a blind individual by failing to accommodate her so she can serve as a juror in a criminal action.  Before the Court is Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss these two claims.

The Court does not reach the merits of the pending motion to dismiss.  Rather, in the exercise of its independent obligation to ensure that subject matter jurisdiction exists, *see Antonyuk v. James*, 120 F.4th 941, 1039-40 (2d Cir. 2024), the Court determines that Plaintiff lacks standing to assert her claims against Defendants because, based on her own allegations, an intervening act of independent judicial discretion by a non-party broke the causal chain between Defendants and Plaintiff's alleged injury.  Accordingly, and for all the reasons set forth below, the case is dismissed without prejudice.

### BACKGROUND[2]

Plaintiff is legally blind and uses a white cane for mobility, a screen reader for navigating her computer and phone, and other assistive technology in her every day life.  AC ¶ 1.  She is a resident of New York County, New York.  AC ¶ 2.

---

[2] The facts as stated herein are based on Plaintiff's allegations in the Amended Complaint and are accepted as true for the purpose of the pending motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In addition, while not attached thereto, in her Amended Complaint, Plaintiff quotes repeatedly from and heavily relies on excerpts from the transcript from the state court *voir dire* proceedings in the criminal case from which she was ultimately dismissed as a potential juror, which she herself attached as an exhibit in opposing Defendants' pre-motion letter concerning Defendants' anticipated motion to dismiss the original complaint.  *See* AC ¶¶ 6, 11-12 (quoting ECF No. 23-1, Transcript of *Voir Dire* Proceedings ("State Tr.")).  Accordingly, the Court may consider the transcript excerpts in ruling on the current motion.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (noting courts may consider the fact alleged in the complaint as well as "documents incorporated by reference in the complaint"); *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (courts may consider document on which complaint heavily relies); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

On October 16, 2023, Plaintiff reported for jury duty in New York County at 111 Centre Street, New York, New York. AC ¶ 2. She participated in *voir dire* for a specific criminal case concerning allegations of rape and sexual abuse. AC ¶¶ 3-4. She did not raise her hand in response to any questions asked at *voir dire* and was not dismissed that day. AC ¶ 3. The following day, Plaintiff returned to Court and a group of prospective jurors were called to the jury box while she remained in the gallery. AC ¶ 4. The attorneys conducting *voir dire* noted that the evidence presented at trial would include text messages and photos. AC ¶ 5; *see* State Tr. at 7 (noting that the evidence in the case included images and video).

At some point all the jurors were excused from the courtroom. AC ¶¶ 5, 6. At that time, defense counsel told the presiding judge that the defense consented to excluding Plaintiff "because she wouldn't be able to see the evidence." AC ¶ 6; *see also* State Tr. at 2-3. The bailiff then told Plaintiff that she was excused from jury duty and informed her that "counsel was concerned about her ability to review all the evidence in the case." AC ¶¶ 7-8. The prospective jurors, including Plaintiff, were then called back into the courtroom. AC ¶ 9. Sometime later, the court asked the jurors, except Plaintiff, to leave the courtroom and indicated that the court understood Plaintiff wished to address the court. AC ¶ 9. The following conversation took place:

> THE COURT: All right. So I understand you wanted to address the Court. You were excused from service today and I understand you wanted to say something at this time.
>
> PROSPECTIVE JUROR: Oh, yes. I just wanted to request that I have the right to serve irrespective of my disability with reasonable accommodations.
>
> THE COURT: Understood. Okay. Thank you. Is there anything else you want to tell me at this time.
>
> PROSPECTIVE JUROR: I suppose as a blind person I think it's important that we're not automatically excluded from important deliberations like this. I work. I'm an athlete. I do lots of things and based off of what I heard today, there is no reason that I believe that I could not serve as an impartial juror who understands all of the evidence and everything implicated.

THE COURT: Thank you so much . . . .

State Tr. at 6; *see also* AC ¶ 10.

Thereafter, Plaintiff was excused from the courtroom and the court, praising Plaintiff's dedication to her civic duty, asked counsel for both sides "whether any reasonable accommodations would be enough to accommodate this prospective juror's disability." *Id.*; *see also* AC ¶ 11. The prosecutor stated that with respect to text messages, "we could make a reasonable accommodation for somebody who is visually impaired," but otherwise noted some uncertainty as to whether any accommodations were possible for her to view photographic evidence contained in text messages. State Tr. at 7-8. Indeed, the prosecutor went on to state that Ms. Lakrout "would have to tell us what it is that accommodates her to let her look at a picture." AC ¶ 11; State Tr. at 7. Defense counsel stated she did not "know the level of [Plaintiff's] visual impairment" but that it had multiple concerns, namely: (1) that she will not be able to "look at the demeanor of the testifying accuser, and this is a one witness case" where credibility was key; (2) that video evidence and emojis in text messages might not be able to be shared with Plaintiff "without editorializing"; and (3) that any description of the video evidence relayed to Plaintiff would "essentially be someone testifying as to what's on the video." *Id.* at 8-9; *see also* AC ¶ 12. The presiding judge ultimately agreed and excused Plaintiff without further discussion. AC ¶ 13. Both sides reiterated that they consented to Plaintiff being excused. State Tr. at 9.

Roughly nine months later, Plaintiff submitted a public records request to the New York State Unified Court System Office of Court Administration requesting "any and all documents pertaining to New York County Supreme Court, Criminal Term's policies and procedures with respect to adaptive technology to assist blind jurors." AC ¶ 16. Shortly thereafter, she received a single two-page document which, according to her, described only "the Court's obligations pursuant to the ADA" but did "not indicate that the Court is fulfilling or complying with those

obligations." AC ¶ 17.  She then submitted a second request for "any and all documents pertaining to New York County Supreme Court, Criminal Term's use of adaptive technology to assist or accommodate blind jurors or prospective jurors, including, but not limited to contracts for service or invoices and/or receipts for the purchasing/leasing/renting/hiring of text to voice technology, and image describers."  AC ¶ 18.  In response, the Office of Court Administration stated that it failed to locate any responsive documents.  AC ¶ 19.

Plaintiff alleges that the lack of documents and her "lived experience as a juror" indicates a systemic failure by the New York County Supreme Court, Criminal Term in accommodating blind individuals called to jury duty.  AC ¶ 21.  She asserts that Defendants "discriminated against [her] by dismissing her on the basis of her blindness, failing to reasonably accommodate her or provide auxiliary aids and services, and failing to have any policies or procedures in place with respect to assistive technology for blind jurors."  AC at 1.  In turn, she "seeks to remedy the systemic discrimination by Defendants against blind individuals who report for jury duty each year, entirely capable of fulfilling their civic duty as jurors."  AC at 1.

Defendants filed a pre-motion letter seeking leave to file a motion to dismiss the originally filed complaint naming both NFBNY and Emeline Lakrout as Plaintiffs, [ECF No. 22], which Plaintiffs opposed.  [ECF No. 23].  The Court granted Defendants leave to file their contemplated motion to dismiss and simultaneously granted Plaintiffs leave to file an amended complaint.  [ECF No. 25].  Thereafter, Plaintiff Lakrout filed the operative Amended Complaint on December 20, 2024, which no longer included NFBNY as a Plaintiff. [ECF No. 27].  In turn, Defendants again filed a pre-motion letter requesting leave to file a motion to dismiss, [ECF No. 30], which Plaintiff opposed.  [ECF No. 31].  Thereafter, Defendants filed the pending motion to dismiss [ECF No. 36], with an accompanying memorandum of law ("Mem."), [ECF No. 38], and declaration from

defense counsel Michael J. Siudzinksi, Esq.  [ECF No. 37].  Plaintiff filed an opposition ("Opp'n"), [ECF No. 41], and Defendants filed a reply ("Reply").  [ECF No. 42].

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The "plausibility standard" articulated in *Iqbal* "is not akin to a 'probability requirement,'" but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Additionally, a federal court has an independent gate-keeping obligation to assure itself of its own jurisdiction and that a plaintiff has established Article III standing.  *Antonyuk*, 120 F.4th at 1039-40.  Pertinent here, a court lacks subject matter jurisdiction if "the plaintiff lacks constitutional standing to bring the action."  *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015).  The Constitution limits federal court jurisdiction to "actual cases or controversies" between the parties before the court, and the standing requirement exists "to ensure that federal courts do not exceed" that limitation.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and citation omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992).  Specifically, a plaintiff must allege an "injury" that is "fairly traceable to the defendant's allegedly unlawful conduct" and is "likely to be

redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 669 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)); *see also Murthy v. Missouri*, 603 U.S. 43, 57 (2024). The Second Circuit has held that the causal connection element of standing is not "an onerous standard" and that "[a] defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55-56 (2d Cir. 2016).

## DISCUSSION

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84–85 (2d Cir.), *corrected*, 511 F.3d 238 (2d Cir.2004)). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Jury service is one such program contemplated by Title II. *See Tennessee v. Lane*, 541 U.S. 509, 527 (2004). Similarly, the Rehabilitation Act, which was enacted prior to the ADA and applies to programs that receive federal funding, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794(a).[3]

To ensure those requirements are met, both Acts mandate that reasonable accommodations be provided to a disabled individual so that the individual can access and meaningfully take part

---

[3] While both parties acknowledge there is a factual question as to whether the New York State Supreme Court-Criminal Term receives federal funding such that it is subject to the Rehabilitation Act, Mem. At 5 n.2; Opp'n at 5 n.13, this dispute is irrelevant to the outcome since, as discussed below, Plaintiff lacks standing to sue under either Act.

in public services. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186-91 (2d Cir. 2015) (reversing grant of summary judgment to defendants on ADA and Rehabilitation context in education context where plaintiff made out *prima facie* case that he was denied a reasonable accommodation to prepare for medical exams in light of his mental health condition). The Second Circuit has held that the elements of a claim for violation of both Acts are typically the same and require a plaintiff to demonstrate "(1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *Id.* at 187 (quotation omitted); *Mills*, 572 F.3d at 73-74.

Defendants raise various arguments in their motion, namely (1) that Plaintiff has failed to plausibly allege the third element of her claims for violation of the ADA and Rehabilitation Act; (2) that Plaintiff has failed to allege damages under the ADA or Rehabilitation Act; (3) that Plaintiff is not entitled to declaratory or injunctive relief; and (4) that Defendants Tingling and DiSanto are not necessary parties and should be dismissed. *See generally* Mem.

With respect to Defendants' first argument, that Plaintiff has failed to allege the third element of her ADA and Rehabilitation Act claims, Defendants argue that none of the named Defendants were responsible for Plaintiff's dismissal from jury service and that her dismissal was an exercise of discretion by the presiding judge and counsel to both parties. Mem. at 4-7. Plaintiff counters that she has plausibly alleged that she was denied a requested accommodation and, in turn, excluded based on her disability and that Defendants systematically exclude blind individuals from jury service by not having assistive technology or auxiliary aids available. Opp'n at 4-9. Thus, she argues that her exclusion "was unrelated to judicial discretion or any discussion between

counsel for the parties, but rather resulted from the fact that the service providers and technology necessary to accommodate [her] were not even available in the courthouse that day at all."  Opp'n at 6.

Defendants do not expressly argue that Plaintiff lacks standing to bring her claims, and instead cast their dismissal motion as challenging Plaintiff's pleading of the traceability element of her substantive ADA and Rehabilitation Act claims.  Mem. at 4-7 ("There is no factual dispute that Plaintiff was relieved from jury service at the direction of the parties in the underlying criminal action, *not* by Defendants' actions or inaction.") (italics in original).  However, this Court has an independent obligation to assure itself that Plaintiff has Article III standing "regardless of whether it is challenged by any of the parties." *Antonyuk*, 120 F.4th at 1039-40 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)).  Moreover, Defendants' argument that Plaintiff has failed to allege the third element of her claims—*i.e.*, that she was discriminated against "by Defendants"—directly implicates Plaintiff's standing to bring her claims.  Thus, the Court must determine the threshold question of whether Plaintiff has standing to assert her claims before reaching the merits.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (explaining that Article III standing "is the threshold question in every federal case, determining the power to entertain the suit") (citation omitted); *Carter*, 822 F.3d at 54-55 (noting that in the absence of Article III standing, a district court "lacks the power to adjudicate the merits of the case").

With respect to standing, "it is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Murthy*, 603 U.S. at 57 (quoting S*imon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 42 (1976)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Thus, the Supreme Court has cautioned against

theories of standing that "require guesswork as to how independent decisionmakers will exercise their judgment." *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013). Of course, standing *may* be satisfied if a defendant's conduct nonetheless indirectly injuries a plaintiff even after intervening conduct by another individual. *Carter*, 822 F.3d at 55-56.

Here, the allegations in the Amended Complaint present a unique interaction between a New York state trial judge's discretion in excusing jurors, a criminal defendant's constitutional right to a fair trial, and the rights under the ADA and Rehabilitation Act of a disabled individual to serve on a jury. However, as is clear from the Amended Complaint and the transcript from the underlying state court proceedings, Plaintiff's claimed injury—of being dismissed from jury service in a particular criminal case and allegedly being denied a reasonable accommodation—stems not from any action or inaction by the named Defendants, but rather, flows purely from the intervening act of the trial court in exercising its discretion to excuse Plaintiff at the request of both parties in that case. The state court clearly explored "whether any reasonable accommodations would be enough to accommodate" Plaintiff to serve as a juror in the criminal case before him, but ultimately concluded, after hearing from both parties, that even with the accommodations available, she could not serve so as to ensure the parties a fair trial given the nature of the evidence to be presented at trial. AC ¶ 11; State Tr. 6-9. In so doing, the court balanced Plaintiff's right to serve on the jury with reasonable accommodations with the criminal defendant's right to a fair trial and the parties right to exclude jurors for cause.

Indeed, the underlying transcript reflects a typical exercise of discretion by a New York state court, irrespective of whether Plaintiff thinks the exercise of that discretion was correct, in determining whether a potential juror's disability prevents her from providing reasonable jury

service even with accommodations.  *See People v. Guay*, 18 N.Y.3d 16, 23-24, 959 N.E.2d 504, 935 N.Y.S.2d 567 (N.Y. 2011) (holding that a trial court did not abuse its discretion in granting a cause challenge and dismissing a hearing-impaired juror "because the record supported the determination that his hearing impairment would have unduly interfered with his ability to be a trial juror"); *People v. Guzman*, 76 N.Y.2d 1, 5, 555 N.E.2d 259, 556 N.Y.S.2d 7 (N.Y. 1990) (noting that a disabled individual cannot be disqualified from jury service by reason of the disability alone but explaining that "[a]s with most juror qualification questions, the determination whether a hearing-impaired person can provide reasonable jury service in a given case must be left largely to the discretion of the trial court, which can question and observe the prospective juror and the interpreter during the voir dire"); *see also U.S. v. Watson*, 483 F.3d 828, 829-35 (D.C. Cir. 2007) (upholding dismissal of blind jurors on rational basis review in face of challenge by defendant in light of the "substantial amount of visual evidence in the government's case").  These decisions came in the context of criminal defendants challenging the exclusion or inclusion of potential jurors in light of their disabilities as opposed to ADA claims asserted by the jurors themselves.  *Guay*, 18 N.Y.3d at 21; *Guzman*, 76 N.Y. 2d at 4-5; *Watson*, 483 F.3d at 829-35. However, these decisions are nonetheless relevant here as they demonstrate the obvious truth that the state court acted within its independent discretionary authority, which is an intervening act that cut off any causal connection between Defendants and Plaintiff's alleged injury, because Defendants were not involved in any way in the exercise of that discretion.  *See Lujan*, 504 U.S. at 562 (noting that where standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," a plaintiff will have a "substantially more difficult" burden to establish standing) (citation omitted); *see also Clapper*, 568 U.S. at 413 (noting the Supreme

11

Court is "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment").

Echoing the principle that courts retain discretion to empanel jurors in a given case, the district court in *Galloway v. Superior Court of the District of Columbia*, 816 F. Supp. 12, 16-18 (D.D.C. 1993), struck down a policy that excluded all blind individuals from serving as jurors given such a policy plainly violated the ADA, but nonetheless explained that a court and the attorneys retain discretion in determining whether it is appropriate for a visually impaired juror to serve in a given case given the particular facts or circumstances of that case.  Indeed, the court eloquently explained:

> [J]ust as no *per se* rule of exclusion should be employed against blind persons who wish to serve as jurors, no *per se* rule of inclusion should apply either. . . .  [T]here may be cases in which it would be inappropriate for a blind person to serve as a juror—cases in which there is a substantial amount of documentary evidence, for example—and that the decision as to whether he should be empaneled in any particular case should be left to the Judge, the attorneys, and the *voir dire* process. In many cases, a blind juror can certainly provide competent jury service.

*Galloway*, 816 F. Supp. at 18.

Thus, the intervening and independent act of the challenge by the parties and the discretion exercised by the court clearly broke the causal chain between Defendants, who played no role and were not involved in any way in the exercise of the court's discretion, and Plaintiff's alleged injury. *See Murthy*, 603 U.S. at 57-68 (finding social media users lacked standing to sue federal officials for alleged suppression of their posted content because they failed to show any content moderation was traceable to government-coerced enforcement rather than the social media companies' independent judgment to moderate); *Allen v. Wright*, 468 U.S. 737, 756-59 (1984) (holding that parents of children attending public schools had no standing to bring claim that the IRS, by granting tax-exempt status to some racially discriminatory schools, diminished their children's opportunity to receive education in a racially integrated school given injury resulted from the

12

independent acts of third parties and the link between IRS' conduct and injury was "attenuated at best"); *Simon*, 426 U.S. at 41-42 ("[I]njury at the hands of a hospital is insufficient by itself to establish a case or controversy" against treasury officials); *see also Lujan*, 504 U.S. at 562; *see also Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.*, 145 F.4th 212, 225-27 (2d Cir. 2025) ("[W]e read the amended complaint to suggest that [the] injury" of unpaid or delayed reimbursement "is caused by [the third party] healthcare plans and IDR entities," and "not by the [government agencies]" responsible for deadline enforcement, "and therefore hold that [plaintiff] has failed to carry its burden of alleging" standing to sue the government agencies where complaint did not suggest the agencies' "inaction [in enforcing deadlines] had a determinative effect on the third parties").

Nonetheless, Plaintiff insists that the actions of the judge and parties to the criminal action from which she was excused, do not defeat her plausibly alleged claim against the named Defendants, arguing that "[t]he availability of reasonable accommodations in the form of auxiliary aids or adaptive technology is not the responsibility of the lawyers or the presiding judge."  Opp'n at 7.  She reasons that that the presiding judge in the state court case "played the same role that an individual poll worker would in informing a wheelchair user that they cannot enter an inaccessible polling station, or a teacher informing a deaf child in a classroom that there is not a sign language interpreter available to allow them to participate alongside other students" and, in turn, argues that discrimination "is not a question" of discretion where there is systemic exclusion.  *Id.* at 8.  But Plaintiff's analogy falls flat.  The court in the underlying state case here is not a mere gatekeeper relaying the fact that systemic structural barriers prevent access to disabled individuals, as the examples above reflect.  *See Crawford v. Hinds Cnty Bd. Of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021) (explaining, in the context of standing to seek prospective injunctive relief, that "a plaintiff

13

with a substantial risk of being called for jury duty has standing to seek an injunction against a systemic exclusionary practice but not a one-off, episodic exclusion related to a particular judge's actions").  Rather, the allegations and undisputed facts here are that the court exercised its discretion in balancing the defendant's right to a fair trial and Plaintiff's rights under the ADA to reasonable accommodations.  That in this particular instance the court determined Plaintiff could not serve given the particular nature of the evidence in the case does not plausibly reflect that any systemic inaction by Defendants infected that decision and indirectly caused Plaintiff her injury. Plaintiff accordingly fails to plausibly tie her injury to any action or inaction *by Defendants*.

While Plaintiff alleges that Defendants systematically exclude blind individuals from jury service, Plaintiff's own pleading makes clear that Defendants promulgate information about the "court's obligations pursuant to the ADA," and that an individual judge, who is not a party to this case, exercised his discretion to excuse Plaintiff from jury service after exploring the possibility of accommodations with the parties to the underlying criminal trial (who likewise are not parties and both urged the court to excuse Plaintiff).  AC ¶¶ 11-13, 17.  Moreover, while Plaintiff's Amended Complaint is dismissive of the two-page document detailing "the Court's obligations pursuant to the ADA" that she was provided in response to her records request, these allegations plainly show that Defendants *have* promulgated guidance concerning a court's obligations under the ADA.  AC ¶ 17 (alleging that though the document "describes the Court's obligations pursuant to the ADA, it does not indicate that the Court is fulfilling or complying with those obligations."). Thus, having put judges on notice that they must comply with the ADA (which the presiding judge in this case plainly understood as reflected in his having pressed the parties to explore potential reasonable accommodations), AC ¶ 11; State Tr. 6-9, Defendants plainly play no role in whether an individual judge nonetheless dismisses an individual juror based on unique considerations in an

14

individual case.  And here, Plaintiff has not plausibly alleged that her dismissal was caused by Defendants' alleged systemic action or inaction, as opposed to the individual judge's discretion to dismiss an individual juror based on considerations germane to the trial presentation in the particular criminal case.

In short, the critical intervening act of discretion appropriately exercised by the state court, which this Court cannot, and is not asked to, second-guess, broke any causal connection between Defendants and Plaintiff's alleged injury.  *See Murthy*, 603 U.S. at 57; *Simon*, 426 U.S. at 41-42.[4] Thus, Plaintiff does not have standing to bring her claims of allegedly systemic exclusion of visually impaired jurors by Defendants when her allegations do not plausibly allege that her injury is fairly traced to any such purported systemic action or inaction by Defendants.

Plaintiff's lack of standing is dispositive, which precludes the Court from examining the merits of the claim and Defendants' remaining arguments raised in their motion.  *See Carter*, 822 F.3d at 54-55 (explaining that dismissal for lack of Article III standing "is one for lack of subject

---

[4] While not key to this Court's decision, the briefing in this case clearly demonstrates New York State courts have accommodated disabled individuals with respect to jury service.  *See* Mem. at 7 (citing *Guzman*, 76 N.Y. 2d at 5-7 (affirming trial court's denial of defendant's challenge for cause to exclude hearing-impaired juror) and *People v. Cruz*, 46 A.D.3d 313, 314, 847 N.Y.S.2d 188 (1st Dep't 2007) (affirming denial of defendant's challenge for cause against hearing-impaired juror given reasonable accommodations were able to ensure the juror would be qualified to serve)).  Further, the Court is aware of other cases reflecting that visually impaired individuals have served as jurors in criminal cases.  *See People v. Caldwell*, 159 Misc. 2d 190, 191-94, 603 N.Y.S.2d 713 (N.Y. Crim. Ct. New York County 1993) (holding that empaneling of a visually impaired juror did not deny the defendant due process because the visually impaired juror was able to fulfill her functions with reasonable modifications; "If this court were to hold that Ms. B. was disqualified simply because a few documents and a few photographs are presented, it would, in effect, be concluding that there were almost no cases on which visually-impaired or blind jurors could sit" which would run afoul of the spirit and intent of the ADA and Rehabilitation Act); *see also People v. Pagan*, 191 A.D.2d 651, 652, 595 N.Y.S.2d 486 (2d Dep't 1993) (affirming trial court's rejection of challenge to visually impaired juror reasoning that "although we recognize that sight is a factor in testing the credibility of a witness [] we reject the defendant's contention that the juror would be unable to properly evaluate the credibility of the witnesses").

matter jurisdiction, [] and without jurisdiction, the district court lacks the power to adjudicate the merits of the case").[5]  Accordingly, Plaintiff's claims are dismissed without prejudice.  *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 121 (2d Cir. 2017) (explaining that "where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*") (italics in original).

### CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint is dismissed without prejudice for lack of standing.

The Clerk of Court is respectfully requested to terminate docket entry 36 and close the case.

**SO ORDERED.**

**Dated: March 26, 2026**
**New York, New York**

_Mary Kay Vyskocil_
**MARY KAY VYSKOCIL**
**United States District Judge**

---

[5] The Court notes that, as both parties agree, the Second Circuit has repeatedly described the third element of Plaintiff's ADA and Rehabilitation claim as requiring the allegation of discrimination "*by defendants*."  Mem. at 5 (citing *Mills*, 572 F.3d at 74 (emphasis added); Opp'n at 4 (citing *Powell*, 364 F.3d at 85).  Thus, for largely the reasons set forth above in connection with standing, Plaintiff arguably fails to allege the third element of an ADA or Rehabilitation Act claim since her pleading reflects that she was not dismissed from jury service due to any purported systemic inaction or action *by Defendants*, but rather, was dismissed as a result of an exercise of discretion by the presiding judge.